LUKE LOOMIS v. NELSON L. ROBERTS.

*Cloud on title—Possession with claim of ownership—Ejectment by assignee of certificate of purchase.*

1. Proof of presumptive title will sustain a bill to remove a cloud from title when filed by one in possession.

2. Actual possession with a claim of ownership in fee establishes a presumptive title as against everyone but those whose title is better.

3: One who by deception obtains an assignment of a certificate of purchase from one who has parted with his title and tells him so, and who then obtains a patent on such certificate, becomes a mala fide trustee of the legal title for his assignor; but he does not thereby get the rights of the legal owner of the title as against one who is in actual possession claiming ownership, and he cannot harass the latter by proceedings in ejectment when his assignor has made no claim.

Appeal from Tuscola. (Wixson, J.) June 4.—June 10.

Bill to clear title. Defendant appeals. Affirmed.

*T. W. Atwood* for complainant. Possession should be protected against all who have no better title : *Covert v. Morrison* 49 Mich. 133; this is so where the title of an adverse claimant is a mere pretense : *Hanold v. Bacon* 36 Mich. 1; *Richardson v. Tolman* 44 Mich. 379; *Austin v. Dean* 40 Mich. 386; a patent relates back to the date of entry and perfects the title of the person then entitled : *Fisher v. Hallock* 50 Mich. 463; *Johnson v. Ballou* 28 Mich. 379; *Busch v. Donohue* 31 Mich. 481; the issue and record of the patent creates an apparent title, but a bill in equity will lie to test the force of the patent (*Romain v. Lewis* 39 Mich. 233; where complainant has long held possession under an honest claim of title): *McKibbin v. Bristol* 50 Mich. 319.

*H. H. Hoyt* for defendant.

CHAMPLIN, J. The bill alleges that complainant is the owner in fee and in the actual possession of the northeast quarter of the southeast quarter of section 24, township 13 north, range 7 east, and that it is worth $1500 or upwards. This land he states was purchased from the State of Michi-

gan on the 17th day of April, 1851, by Ephraim Beebe, and by him sold and conveyed by warranty deed about January 1, 1853, to J. L. Watkins; that Beebe paid the State the full purchase price and took the usual certificate of purchase, and never surrendered the same or received a patent of the land from the State. Watkins never recorded his deed. The land was returned to the Auditor General for delinquent taxes assessed for the years 1852, 1853 and 1854, and was purchased at the tax sales by one Darwin A. Pettibone, who received the Auditor General's deeds therefor, which were duly recorded. He further claims by his bill that one John S. Moore purchased the land from Pettibone in 1859, who promised to convey by warranty deed, but did not do so; that Moore went into actual possession in 1860, built a house thereon, and remained and continued in open and peaceable possession of the same, claiming title thereto by virtue of such purchase, until about the 13th day of August, 1873, when he sold and conveyed the same by warranty deed to one Joshua Parks, who went immediately into actual possession of the land, and remained in possession until about September 15, 1873, when he sold and conveyed the premises to Abraham Carter, and that he went into immediate possession and so remained until November 3, 1873, when he sold and conveyed the same by warranty deed to complainant, who has since the date thereof been in the actual, open and peaceable possession of said land, claiming title thereto; that when Moore went into possession the land was wild and uncultivated, but that he and those claiming through and under him have improved, cultivated and cleared up all but about five acres of the land; that on the 10th of November, 1880, Pettibone conveyed said land to complainant by a quitclaim deed, in pursuance of his agreement with Moore.

The bill further charges that one H. H. Hoyt, as the agent and attorney of Nelson L. Roberts, on or about the 10th day of March, A. D. 1879, applied to said Beebe to purchase said land; that at the time said Beebe informed said Hoyt he did not own said land, nor did he have any interest

therein, as he had before that time—in the year 1853—sold
and conveyed the same by warranty deed to said J. L. Wat-
kins. Thereupon said Hoyt inquired of said Beebe if he
had in his possession the certificate of purchase issued to him
by the Commissioner of the Land Office, and Beebe replied
that he had. Thereupon said Hoyt proposed that if Beebe
would assign said certificate to said Roberts he would give
him five dollars for so doing, and said Beebe consented so to
do, at the time expressly stating to said Hoyt that he had no
interest in the land. Further, that on that day said Beebe,
for the consideration of five dollars, did execute and deliver
an assignment in writing of said certificate to said Nelson
L. Roberts. That afterwards, on or about the 24th day of
March, 1879, said Nelson L. Roberts surrendered said cer-
tificate, together with the assignment thereof, to the Secre-
tary of State of Michigan, and received from the State a
patent of said lands in his own name, which patent he had
procured to be recorded in the office of the register of deeds
for Tuscola county, and now fraudulently claims to own said
land in fee by virtue of said patent. Your orator further
shows that on or about the 16th day of May, 1879, said Rob-
erts commenced a suit in ejectment in the circuit court for
Tuscola county against your orator, for the purpose of
obtaining possession of said land by virtue of said patent, in
which your orator has appeared and pleaded, and the cause
has been regularly noticed for trial at the present term of
this Court. Your orator further shows that said Roberts has
not any other or further claim of title to said land than by
virtue of said patent, and that said patent, the record thereof,
and claim of title made by said Roberts, constitute a cloud
upon your orator's title, and ought to be removed by a decree
of this Court.

The answer admits the purchase by Beebe as alleged; that
defendant procured a patent in his name, and claims owner-
ship in virtue of it; and that he brought ejectment, as stated,
to enforce his right of entry as such owner; and that such
action has reached the stage mentioned, and is pending. It
denies that Beebe conveyed to Watkins as stated, or conveyed

to any person other than defendant, and denies that Beebe, on the occasion of the assignment of the certificate to defendant, informed defendant's agent that he had previously conveyed to Watkins or any other person by warranty deed. It denies generally that Loomis has any prescriptive title or any tax title. Without any admission or denial, it puts Loomis to proof of the tax proceedings and tax titles, but sets up that in case the alleged tax deeds were given, they were overreached and made abortive by a later sale, viz., a sale to Alson Greenfield for the tax of 1861. The sale set up by Pettibone to Moore is expressly denied, and it is particularly denied that Pettibone ever agreed to sell to Moore, or ever deeded to him. On the contrary the answer insists that Pettibone made conveyance to others. Moore's entry, about January 1, 1880, and his occupation therefrom, as stated, is denied, as is also the allegation that he resided on the premises under claim of title based on any tax sale to Pettibone until about August 13, 1873.

The existence of the tax sales and tax deeds to Pettibone is neither admitted nor denied. Likewise the conveyance by Pettibone to complainant; the successive possessions after Moore's entry; but the answer denies possession from the first of January, 1860. Proofs were taken. Two deeds were introduced from the Auditor General to D. A. Pettibone of the land in question : one for the taxes of 1852 and the other for the taxes of 1854. Also a contract from D. A. Pettibone to William H. Randall, agreeing to convey, by quitclaim deed, the land in question to Randall, bearing date July 6, 1860, and a contract to extend the time mentioned in this contract to a Mr. Johnson, dated May 21, 1861. Oral testimony was introduced of an assignment of the Pettibone contract by Johnson to Moore, and under this contract Moore entered into possession either in the fall of 1861 or the spring of 1862. The conveyances from Moore to Parks, from Parks to Carter, and from Carter to the complainant, were proved, as alleged in the bill; also the possession from the time of Moore's entry, and the improvements made, as stated in the bill. Proof was also made of the defendant's

obtaining the assignment of the certificate from Beebe, who testified that he sold the land to Watkins two or three years after he bought it, and had received his pay in full, and that he informed Hoyt when he obtained the assignment that he had previously sold the land to Watkins. Witness further said : "If I did assign the certificate, I can say that I never received to exceed five dollars for the assignment of the certificate. I have no recollection of ever receiving anything. I understood that Roberts and Hoyt were connected with the land in some way, and were having trouble about the title, and wanted to find out something about the title. Main question seemed to be was when I bought, or who I bought it of, and who I sold it to. I think, if I did make the assignment of the certificate, I made it in order to assist them in perfecting their title, but at the same time told them I had sold the land to Watkins."

The deed from Pettibone to complainant was also given in evidence. The defendant's solicitor contends that it was incumbent upon the complainant to *substantiate* and clearly establish his title as alleged ; and he claims that it was indispensable for him to trace his right to the legal title by a continuous chain back to Pettibone ; not through the quitclaim deed direct from Pettibone to him, but through the intermediate contracts and conveyances alleged. He also claims that complainant must show valid deeds from the Auditor General to Pettibone, or an adverse possession for twenty years prior to the commencement of the ejectment suit. Several objections to the validity of the tax deeds are urged, which, in the view I take of the case, it is not necessary to discuss.

It was held in *Hall v Kellogg* 16 Mich. 135, that where a bill is filed by a party in possession for the purpose of removing a cloud upon his title, he need make out only a presumptive title to the land in question. Mr. Justice Campbell in delivering the opinion of the Court in that case, said : "We can see no reason for requiring of complainant any proof of title beyond that which, when making out a presumptive case against the defendant, has not been met by any proofs

adequate to shake or destroy it." This decision was subsequently approved in the case of *Rayner v. Lee* 20 Mich. 389. In this case the complainant had made out a title presumptively good as against the defendant by showing that the parties through whom he obtained his conveyance were in actual possession, claiming ownership in fee. This title is good as against every person except those having a better title. If the tax titles were admitted to be invalid, the case shows that the legal owner of a better title is Mr. Watkins, who makes no claim; that by obtaining an assignment of the certificate of purchase, and obtaining the patent thereon, the defendant is a trustee mala fide of the legal title for Watkins, but he is not thereby vested with the rights of the legal owner of such title as against complainant, and was neither authorized nor justified in harassing the complainant with the action of ejectment commenced by him. The presumptive case made by the complainant must prevail over that acquired by the defendant, because its acquisition by the defendant was a fraud upon the true owner of the grantee of Beebe, and was obtained by deceit in the manner stated in Beebe's testimony, and is now being used to dispossess complainant of lands of which he is the rightful owner and lawful possessor against every person except Watkins, who does not appear to make any claim.

The decree appealed from is affirmed with costs.

The other Justices concurred.